# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| DEMETRIUS MARCELLUS GREEN, ) <br> ) <br> Movant, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) | Case No.    CV412-070 <br> CR408-315 |

## REPORT AND RECOMMENDATION

Demetrius Marcellus Green, who pled guilty to a drug distribution conspiracy charge, moves for 28 U.S.C. § 2255 relief. (Doc. 1.[1]) For the following reasons, his motion should be **DENIED**.

## I. BACKGROUND

In 2008, Green was one of 45 defendants indicted in a drug conspiracy involving large quantities of crack and powder cocaine, as well as marijuana. (Presentence Investigation Report ("PSI") at 10 ¶ 1.)

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV412-070. "Cr. doc." refers to documents filed under movant's criminal case, CR408-315.

During the pre-indictment investigation, wiretaps and confidential sources revealed that Green was associated with Jamerson Vashon Smalls' cocaine distribution empire. Smalls supplied cocaine to many local dealers. One of his associates, Telly Petty, sold multiple quantities of cocaine to Green, who then distributed the drugs to others. (*Id.* at 11-13 ¶¶ 7-15.) Green was arrested on August 29, 2008, while attempting to purchase eleven ounces of crack and powder cocaine from Petty, who was at that time cooperating with the authorities. (*Id.* at 13 ¶ 14.) He had brought $13,750 in cash for the exchange. (*Id.*)

The indictment was entered on November 11, 2008. A few months later, Green, represented by attorney Dale E. Akins, pled guilty to conspiracy to distribute, and to possession with intent to distribute, an unspecified quantity of cocaine. (Cr. doc. 534.) In exchange, the remaining charges against him were dismissed. (Cr. doc. 917 (plea agreement); cr. doc. 935 (judgment).) Prior to sentencing, a United States Probation Officer prepared a PSI, which relied largely upon Telly Petty's assessment that he had sold Green at least two kilograms of powder cocaine and three kilograms of crack cocaine over the course of

the criminal enterprise. (PSI at 13 ¶ 17.) Under United States Sentencing Guideline ("USSG") § 2D1.1, those quantities resulted in a base offense level of 38, but that number was reduced by two points under the relevant application notes because the case involved crack cocaine in combination with other controlled substances. (PSI at 15 ¶ 24.) After an additional three point reduction for acceptance of responsibility (*id.* at ¶ 30), his total offense level was calculated at 33 points. (*Id.* at ¶ 33.) Combined with his criminal history category of VI, the Guidelines range for imprisonment was 188 to 235 months.[2] (*Id.* at 24 ¶ 70.)

At sentencing, Akins called several witnesses, including Telly Petty, in order to undermine the drug quantity calculations. (Cr. doc. 1158 (sentencing tr.) at 6-53; *id.* at 55-56.) Petty gave a slightly more conservative estimate as to the total number of transactions and amount of cocaine changing hands, (*id.* at 25-29), but the Court was not persuaded. Nevertheless, the judge sentenced Green toward the lower

---

[2] Had the government filed a 21 U.S.C. § 851 information on the basis of Green's prior felony drug convictions, he would have faced a mandatory term of life imprisonment. (PSI at 24 ¶ 71.)

end of the range, imposing 194 months' imprisonment. (Cr. doc. 935.) Green appealed with new counsel, Amy Weil, who argued that the district judge "clearly erred in determining the drug quantity for which he was held accountable for purposes of calculating his base offense level under U.S.S.G. § 2D1.1." *United States v. Green*, 405 F. App'x 402, 402 (11th Cir. 2010). Specifically, she argued that the judge erred by relying on the PSI estimates over Telly Petty's sworn testimony at sentencing. *Id.* The appellate panel found no reversible error, since "even if the district court used the most conservative figures from Petty's testimony, Green's base offense level would have remained the same."[3] *Id.* at 403. Thereafter, Green filed the instant motion for 28 U.S.C. § 2255 relief.

---

[3] During an interview with agents, Petty stated that he sold Green four to five ounces of powder and six to eight ounces of crack on at least 20 occasions, for a total of two kilograms of powder and three kilograms of crack cocaine. (PSI at 13 ¶ 17.) At sentencing, however, he testified that he sold Green between seven and eleven ounces of crack and powder cocaine at a time, rather than ten to thirteen. (Cr. doc. 1158 at 31.) He still insisted that Green purchased primarily crack and had engaged in "roughly 20" transactions with his own money; several other times he approached with his cousin Travian Green. (*Id.* at 32.)

Using the lowest estimate, seven ounces and twenty transactions, Green still purchased approximately 3.96 kilograms of cocaine. The Court will presume for this hypothetical that only 50.1% was crack cocaine. Green, then, purchased approximately 1.98 kilograms of crack and 1.97 kilograms of powder cocaine over the course of the criminal enterprise. Converting those to their marijuana equivalents under USSG § 2D1.1, Green should be held accountable for 39,660 kilograms of marijuana for the crack cocaine (one gram is equivalent to twenty kilograms) and 395

## II. ANALYSIS

Green claims that: (1) the district judge erred in failing to conduct a "sufficiently searching inquiry" to resolve discrepancies in drug quantity estimates relied upon at sentencing; (2) counsel rendered deficient performance by failing to object to the district judge's drug quantity inquiry; and (3) counsel rendered deficient performance by failing to request access to his co-conspirator's PSI. (Doc. 1 at 4-7; 14.)

### A. Grounds 1 & 2

In Ground 1 Green is attempting to relitigate a matter already decided against him by the appellate court. As explained above, he argued on appeal that the district judge erred by relying upon Petty's estimates related in the PSI rather than the modified estimate he provided at sentencing. *Green*, 405 F. App'x at 402. Now, he contends that the sentencing judge erred by failing to require Petty to explain the discrepancy between his two estimates. (Doc. 1 at 20-24.) Ground 1 is

---

kilograms of marijuana for the powder cocaine (one gram is equivalent to 200 grams). In total, then, he would be sentenced based upon 40,055 kilograms of marijuana. Pursuant to the USSG § 2D1.1(c)(1) sentencing table, any drug offense involving more than 30,000 kilograms of marijuana has a base offense level of 38, precisely the same level stated in Petty's heightened PSI estimate.

a repackaged claim that should be dismissed out-of-hand, since a claim rejected by the appellate court does not merit rehearing on a different but previously available legal theory. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000). Moreover, absent some constitutional, jurisdictional, or fundamental error, sentencing claims are not cognizable in a § 2255 motion. *See, e.g., Ayuso v. United States*, 361 F. App'x. 988, 991-92 (11th Cir. 2010) (§ 2255 movant's claim that the calculation of his criminal points under the guidelines was no longer correct because one of his state convictions was vacated after he was sentenced did not constitute a constitutional error and did not "implicate[ ] a fundamental defect in the validity of the district court proceedings" so as to rise to the level of a "miscarriage of justice."); *Vallas v. United States*, 2012 WL 2681398 at * 5 (S.D. Ala. Jun. 7, 2012).

Even if the claim survived those hurdles (i.e., it was not merely repackaged and it implicated constitutional concerns), it would be procedurally defaulted since Green did not raise it on direct appeal. A § 2255 movant may not use a collateral attack as a "surrogate" for a direct appeal. *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004); *see*

*Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal). The courts have crafted the procedural default rule to address such situations: "a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else he is barred from presenting the claim in a § 2255 proceeding." *Lynn*, 365 F.3d at 1234; *Hill v. United States*, 317 F. App'x 910, 913-14 (11th Cir. 2009).[4] There is an exception, however, if Green could establish cause and prejudice excusing his default (or establish his actual innocence). *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *Nyhuis*, 211 F.3d at 1343. Green invokes the exception by arguing that the claim was not raised due to his appellate attorney's ineffectiveness. (Doc. 1 at 4.)

While "constitutionally '[i]neffective assistance of counsel . . . is cause'" for excusing a procedural default, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted), Green has utterly failed to support

---

[4] Green's ineffective assistance of counsel claims are not subject to the procedural default rule and thus "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim[s] on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

his assertion that Weil performed deficiently on appeal.[5] As such, it is conclusory and hence insufficient for present purposes. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)) (no hearing, much less § 2255 relief, based upon self-serving and conclusory claims); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required

---

[5] In evaluating such a claim, the Court applies *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which created a two-part test for determining whether counsel performed ineffectively. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, the defective performance must have prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Green must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

For the prejudice prong he must show that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

In any event, Green has not come forward with any compelling legal basis for challenging Petty's estimates that either attorney overlooked. While he insists that the district judge should have performed a more searching inquiry, his supporting cases, all of which originate in other circuits, are readily distinguishable. All three of the cases involved wild swings in drug quantity estimates, and two involved estimates made by admitted drug addicts. *See United States v. Beler*, 20 F.3d 1428, 1433-35 (7th Cir. 1994) (two estimates from one affiant presented at sentencing varied by a factor of ten and conflicted with the affiant's trial testimony, where he insisted he could not remember the amounts at issue; the affiant also did not testify at sentencing); *United States v. McEntire*, 153 F.3d 424, 434-37 (7th Cir. 1998) (very similar fact pattern); *United States v. Brothers*, 75 F.3d 845, 849-50 (3d Cir. 1996) (wild swing, but there was no indication that the person making the

estimate was a drug dealer). Presented here, in contrast, is a relatively minor discrepancy that had absolutely no impact upon Green's sentencing exposure. *See supra* note 3 (calculating Green's exposure under the most favorable of Petty's assessments). Hence a trial or appellate-level objection relying upon Green's authority was unlikely to succeed.[6]

Green also claims that the quantity would have dropped substantially if Akins had introduced every phone call between him and Petty at the sentencing hearing. (Doc. 1 at 25.) He has not supported this with any citations to the record or other evidence, and United States Probation Officer Marty Bragg, who prepared the PSI, testified that Petty's estimate was consistent with the intercepted phone calls. (Cr. doc. 1158 at 7.) In sum, Green has not shown deficient performance on these facts as to either attorney.

Moreover, he failed to show any resulting prejudice. While he insists that he purchased less than seven to ten ounces at a time from

---

[6] Both attempted to undermine Petty's estimates. Akins objected to the PSI, and called several witnesses, including Petty. He successfully obtained an admission from Petty that he did not have a perfect recollection of how much he sold to Green. (Cr. doc. 1158 at 37-38.) Weil did what she could by highlighting the discrepancy on appeal. *Green*, 405 F. App'x at 402-3.

Petty, nothing he has presented here shows that he purchased less than the minimum amount necessary to obtain a base offense level of 38 (lowered by operation of the Guidelines to 36).[7] In other words, there is no reasonable probability that the district judge, upon a more searching inquiry, would have materially altered his decision. Grounds 1 and 2 thus fail.

## B. Ground 3

Green's final claim for relief contends that Akins was ineffective for failing to request access to Petty's PSI. (Doc. 1 at 26-27.) Those reports are presumed to be confidential; hence their disclosure is

---

[7] Green has not suggested what the appropriate sentencing range would be. Presumptively, he wants another stab at convincing the sentencing judge that he bought no more than a kilogram of cocaine. (Cr. doc. 1158 at 41-43.) He testified at sentencing that he made the purchases over multiple transactions averaging about three ounces, and he had only worked with his cousin, Travian Green, four or five of those times. (Cr. doc. 1158 at 41-43.) But the judge had every reason to disbelieve him. After all, Travian testified that they made between eight and ten joint purchases from Petty. (Cr. doc. 1158 at 22.) And though Travian never saw the cash or cocaine, she could feel the weight and estimated he purchased about eight ounces of some mixture of crack and powder cocaine, rather than the three ounces he reported. (*Id.* at 17-20, 22.) The weight estimate coincides perfectly with Petty's sentencing testimony that he sold him between seven and eleven ounces at a time. (*Id.* at 31.) During an intercepted call, Green asked Petty for eleven ounces total, eight of which were crack. (*Id.* at 33.) But he insisted that it was a quantity he was going to split with Travian. (*Id.* at 43-44.) Regardless, Green has not given the Court any reason to believe that the district judge erred in his preponderance of the evidence drug quantity finding or that any such error was harmful.

11

disfavored absent a heightened showing of particularized need. *See United States v. Gomez*, 323 F.3d 1305, 1308 (11th Cir. 2003). Green states that "he believe[s] the report contains information that could be used to impeach" Petty, but his supposition is not enough. Since he has not posited any special or compelling need for the PSI, a motion by Akins for its disclosure would have failed. He has also failed to offer any facts or argument suggesting that the PSI contained useful information that might have made any difference at sentencing. Consequently, he cannot show that Akins' failure to obtain it was in any way prejudicial. Green's Ground 3 ineffectiveness claim is without merit.

## III. CONCLUSION

For the foregoing reasons, Green's § 2255 motion (doc. 1) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of

appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this 27TH day of September, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA