# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

JAMERSON VASHON SMALLS, )
)
   Movant, )
)
v. ) Case No. CV411-292
) CR408-315
UNITED STATES OF AMERICA, )
)
   Respondent. )

## REPORT AND RECOMMENDATION

Jamerson Vashon Smalls, who pled guilty to a drug distribution conspiracy charge, moves for 28 U.S.C. § 2255 relief. (Doc. 1.[1]) For the following reasons, his motion should be **DENIED**.

## I. BACKGROUND

In 2008, Smalls was one of 45 defendants indicted in a drug conspiracy involving large quantities of crack and powder cocaine, along with marijuana. (Presentence Investigation Report ("PSI") at 10 ¶ 1.)

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV411-292. "Cr. doc." refers to documents filed under movant's criminal case, CR408-315.

During the pre-indictment investigation in 2007, wiretaps and confidential sources revealed that Smalls ran a far-flung drug distribution empire. Agents in Savannah learned of him through a wire intercept on a local cocaine dealer named Stacey Tremaine Golden. (*Id.* ¶¶ 8-9.) They sought and obtained a Title III authorization to intercept Smalls' phone. (*Id.* ¶ 10.)

In the meantime, they interviewed several of Smalls' associates, who explained that he had, on several occasions, traveled to California, purchased 50 to 80 kilograms of cocaine, and then had it shipped back to Atlanta hidden in cars transported on a car carrier. (*Id.* ¶ 11.) The cocaine was then broken up and distributed to lower level dealers, including several in the Savannah area, some of whom were prosecuted as co-defendants. (*Id.*) They fingered Smalls, stating that he sold them multiple kilograms of cocaine on several occasions. (*Id.* at 11-13.) In fact one of his associates, Telly Petty, stated that he had purchased 3-5 kilograms of cocaine once or twice a week from Smalls from late 2006 through October 2007. (*Id.* ¶ 18.)

In August 2008, agents learned that Petty and Smalls' uncle, Henry James, planned on traveling to Atlanta to obtain several kilograms of cocaine from Smalls. Agents tailed them to Smalls' house. On the way back, agents conducted a traffic stop on James' vehicle (Petty was driving separately). After James gave consent to search, the agents discovered 3 kilograms of cocaine stashed in a hidden compartment. (*Id.* ¶ 15.) James later admitted that he had regularly acted as a courier for Smalls and had participated in two trips to California to bring back large quantities of cocaine via car carrier. (*Id.* at 20.)

Several days after the traffic stop, agents arrested Smalls while he was leaving his residence. (*Id.* ¶ 17.) They found a .357 revolver in his vehicle. (*Id.*) Following the stop, agents executed a search warrant on the house. (*Id.*) They discovered a roll of green plastic wrap that had been used to wrap up the 3 kilograms of cocaine seized earlier in the month. (*Id.*) They also found $73,900 in currency and an AK-47. (*Id.*) During a post-arrest interview, Smalls admitted that he had been selling cocaine and marijuana for many years. (*Id.* ¶ 26.)

On February 25, 2009, Smalls pled guilty to Count 1 of the indictment (a drug conspiracy charge) in exchange for the government's dismissal of the remaining 37 charges against him. (Cr. doc. 416.) The PSI estimate, largely based on co-defendant statements, revealed that Smalls should be held responsible for at least 50 kilograms but less than 150 kilograms of cocaine hydrochloride. Consequently, his base offense level was 36 under U.S.S.G. § 2D1.1(c)(5). The PSI also assigned a 2-point enhancement for the possession of a dangerous firearm and a 4-point enhancement for Smalls' role as a leader in the conspiracy. (*Id.* ¶¶ 29 & 4.) However, the PSI also credited Smalls 3 points for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. (*Id.* ¶ 34.) Hence, Smalls' total offense level was 39. His criminal history category was a 1, since he only had a single state conviction which stemmed from the same actions underlying the instant federal offense. (PSI ¶ 42.) With a total offense level of 39 and a criminal history category of 1, the United States Sentencing Guidelines recommended sentencing range was 262-327 months. (PSI ¶ 63.) The sentencing judge imposed a 262-month sentence, at the low end of the Guidelines range. (Cr. 825.)

Smalls appealed, arguing that the sentencing judge erred in applying the leadership enhancement. *United States v. Smalls*, 397 F. App'x 606, 607-8 (11th Cir. 2010). The appellate court affirmed the district court's judgment. *Id.* at 608. Thereafter, he filed the instant 28 U.S.C. § 2255 motion attacking his sentence.

## II. ANALYSIS

Smalls claims that his attorney, Martin Gregory Hilliard, rendered deficient performance by failing to: (1) object to drug quantity calculations at sentencing; (2) object to the U.S.S.G. § 2D1.1 firearm enhancement; and (3) argue effectively that the leadership enhancement was unwarranted. (Doc. 2 at 9-10; doc. 1 at 4-5.[2])

### A. Applicable Legal Standard

On ineffective assistance of counsel claims the Court applies *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which created a two-part test for determining whether counsel performed ineffectively. First, the movant must demonstrate that his attorney's performance was

---

[2] In his petition, he lists four ineffectiveness claims, but the first was not particularized. (Doc. 1 at 4-5.) He generally invoked his Sixth Amendment right to effective representation, but then merely referenced the entirety of his supporting brief. (*Id.* at 4.)

5

deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, the defective performance must have prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Smalls must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315

(11th Cir. 2000) (en banc).

For the prejudice prong Smalls must show that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

**B.   Drug Quantity**

Smalls faults Hilliard for failing to forward his PSI objections to the probation officer who prepared the report. (Doc. 2 at 12.) His objections would have shown that he was only involved with the principals named in the indictment in the final six months of the conspiracy's life, since he started working with Petty in April 2008. (*Id.* at 12-13.)   Presumably, this would limit the amount of cocaine attributable to his involvement. (*Id.* at 13-15.)   Additionally, he insists that Hilliard was ineffective for failing to point out the flawed drug quantities at sentencing. (*Id.* at 11-18.)

The trouble for Smalls is that he was permitted to raise this objection at sentencing.[3] (Cr. doc. 986 at 13; *see* doc. 2 at 14 (admitting in his brief that he submitted his objection at sentencing).) Additionally, a slightly modified form of the claim was included in the final draft of the PSI; Smalls explained that "he only dealt with Petty twice in 2007, and from April 2008, until his arrest in August 2008." (PSI ¶ 7.) Notably, Smalls' story changed by sentencing, where he insisted he only dealt with Petty since April of 2008. (Cr. doc. 986 at 12-13.)

To the extent his objection reached the sentencing judge, Smalls simply cannot show prejudice from Hilliard's failure to submit formal objections to the factual statements in the PSI. In any event, Smalls' current version of the events is directly contradicted by the record and by his own prior statement, as noted above. According to Petty, he had

---

[3] Hilliard explained at sentencing that he brought certain of Smalls' objections to the probation officer and they were included in the final draft:

> Your Honor, in Paragraph 26, Paragraph 7 and Paragraph 12 of the PSI, Mr. Smalls' objections regarding his role in the conspiracy were noted by the probation officer. That was incorporated and made a part of the PSI. The objections that Mr. Smalls had weren't necessarily to his guilt or culpability; they were, however, in fact to him being termed a leader, number one, and some of the weights that were attributed to him, number two.

(Cr. doc. 986 at 6.) It is unclear from Smalls' pleading exactly what was left out. He has not submitted his proposed objections or outlined them for the Court.

8

purchased from Smalls *regularly* since late 2006 or early 2007. (PSI ¶ 18.) He stated that Smalls had supplied him with three to five kilogram quantities of cocaine on multiple occasions, and conservatively estimated that Smalls provided him with a *minimum* of 50 kilograms of cocaine (in fact, he claims that he purchased between 50 and 75 kilograms from Smalls in the summer of 2007 alone). (PSI ¶¶ 15, 18.) In the summer of 2007, he began purchasing three to five kilogram quantities once or twice a week until October 2007. (*Id.*) He also stated that he met Smalls' supplier, Javier Valdivia (a/k/a "El") on several occasions, and Smalls would sometimes purchase 30-40 kilograms at a time. (*Id.*) Smalls has never suggested that Petty fabricated his story about the meetings with "El."

James' account also deviates from Smalls'. He advised agents that he had done work for Smalls starting in 2006. During an interview he revealed that he had made two trips to California for Smalls that year, perhaps inside the indictment window (it charged Smalls with conspiring with the others beginning on about the first day of September 2006). (*Id.* ¶ 20; cr. doc. 3 at 4.) Tyrone Fields, another co-defendant,

related that he had purchased approximately five kilograms of cocaine from Smalls. (PSI ¶ 19.) According to Chris Robbins, another dealer, his source of supply, Ferrell Hull, purchased multiple kilograms from Smalls. (PSI ¶ 11.) He related that Smalls moved 50-80 kilogram quantities from California to Atlanta on car carriers. (*Id.* ¶ 11.)

In the face of overwhelming evidence supporting the 50-kilogram-plus drug quantity, Smalls' timeline is simply unpersuasive. Nor does his assertion that he only dealt with Petty for six months even address the root issue -- whether he transacted more than 50 kilograms of powder cocaine. There is simply no basis for finding that Hilliard performed deficiently in failing to further pursue the drug quantity matter or that his failure to do so in any way prejudiced Smalls.

Nor does the Court accept his argument that Hilliard was ineffective for failing to object under Fed. R. Crim. P. 32(i)(3) on the basis that the sentencing judge failed to require the government to offer evidence supporting the PSI facts, adopted the PSI without explanation, and failed to state his reasons for overruling Smalls' objections. (Doc. 2

at 15-18.) Smalls' objected to a side issue, whether he had dealt with Petty regularly prior to April 2008. He never contested Petty's assertions that Smalls had purchased large quantities of cocaine from "El." Nor did he directly dispute Petty's total estimated drug weight, either then or now. All he disputes was the timing of the transactions. The Court was thus entitled to accept those facts as undisputed.[4] Fed. R. Crim. P. 32(i)(3)(A); *see United States v. Owen*, 858 F.2d 1514, 1517 (11th Cir. 1988) ("Vague assertions of inaccuracies in the report are insufficient [to trigger 32(i)(3)(B)]; instead, the defendant must make clear and focused objections to the specific factual allegations made in the report."); *United States v. Aleman*, 832 F.2d 142, 145 (11th Cir. 1987) ("challenges to the PSI must assert with specificity and clarity each factual mistake of which [the] defendant complains").[5]

---

[4] For the same reason, the Court rejects Smalls' argument that the sentencing judge erred by failing to make individualized findings concerning the scope of Smalls' participation in the conspiracy. (Doc. 2 at 17.)

[5] Smalls also claims that the judge failed to adequately state the reasons for his sentence as required by 18 U.S.C. § 3553(c). (Doc. 2 at 16.) The judge, however, explained in detail his reasoning. (Cr. doc. 986 at 23-24 (sentencing tr. discussing § 3553 and laying out the judge's reasoning for the sentence).) In any event, Smalls' claim is conclusory. He never explains how the sentencing judge failed to meet the § 3553 standard.

## C. Firearm Enhancement

Smalls next complains that the firearm enhancement should not apply since he had no drugs in his vehicle when agents seized the .357 magnum from his car during his arrest (and points out that it was actually his uncle's gun). (Doc. 2 at 20-21.) He states that his counsel was ineffective for failing to object to that in the PSI and at sentencing. (*Id.* at 21.) Finally, he insists the Court erred by failing to state its reasons, on the record, for applying the enhancement. (*Id.* at 23.) Hence, he reasons, Hilliard also erred by failing to object on that basis at sentencing or on appeal.[6] (*Id.*)

Under U.S.S.G. § 2D1.1(b)(1), a district court should increase a defendant's offense level by two where the defendant possessed a firearm in connection with a drug trafficking offense. If the government shows by a preponderance of the evidence that the firearm was present at the site of the charged offense, the burden shifts to the defendant to show that the connection between the firearm and the offense is clearly

---

[6] He states that he was never given an opportunity to defend himself from the flawed charge at sentencing. (Doc. 2 at 24.) Smalls is again employing revisionist history. (Cr. doc. 986 at 6, 12 (sentencing judge offering Smalls the opportunity to state his objections to the factual assertions in the PSI).)

improbable. *United States v. Ferguson*, 316 F. App'x 927, 928 (11th Cir. 2009) (quoting *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995)).

Putting the .357 to the side, Smalls kept an AK-47 in his house, where agents discovered drug packaging material and $73,900 in apparent drug proceeds.[7] (PSI ¶ 17, 29.) In fact, the residence was the site of multiple drug transactions. Agents knew James and Petty picked up around three kilograms of cocaine from the residence, just before they were stopped and the drugs were seized during a subsequent traffic stop. (PSI ¶ 15.) Fields reported to agents that he picked up at least a kilogram of cocaine from Smalls at the house on five occasions. (*Id.* ¶ 18.) Smalls did not object to these facts at sentencing. When given the opportunity to speak, he only objected to the leadership enhancement and the total weight of the drugs attributable to him. (Cr. doc. 986 at 9. ("I'm fighting the kingpin enhancement."); *id.* at 12 (objecting to total drug weight).) Absent any objection, the sentencing judge properly accepted the facts as true, which shifted the burden to Smalls to show

---

[7] The link to the .357 revolver in Smalls' car was admittedly a bit more tenuous, as nothing else related to the drug conspiracy was uncovered there. Still, the Court recognizes that drug dealers moving large quantities of cocaine often keep firearms within easy reach. In that respect the Court is satisfied that the sentencing judge properly found that it was also connected to the offense conduct.

that the AK-47 recovered from his house was totally unrelated to his drug dealing activities. He did not do so. Hence, the Court sentenced Smalls appropriately. (Cr. doc. 986 at 14-15.) Moreover, the sentencing judge made those findings on the record, despite Smalls' insistence that he failed to do so:

> The defendant has been held accountable for distributing significant quantities of cocaine hydrochloride during the course of the conspiracy and was clearly one of the most culpable defendants in this case. The defendant acted as a leader by directing the action of others, and possessed firearms in furtherance of the instant offense. The investigation also confirms that the defendant received substantial financial gains from his illegal activities. Additionally, defendant has continued to participate in the distribution of illegal drugs. Even though he appears before this Court with a category 1 criminal history, he's had two previous drug-related convictions.

(Cr. doc. 986 at 23.) Since the sentencing enhancement was properly applied, Smalls' claim fails. Hilliard simply did not perform deficiently by failing to pursue this matter further, either at sentencing or on appeal.

### D. Leadership Enhancement

In Ground 3 Smalls revisits a matter already decided against him by the appellate court. As explained above, Smalls contended on appeal that the district judge erred by applying the U.S.S.G. § 3B1.1(a) four-point enhancement for his role as a leader in the criminal

enterprise. *Smalls*, 397 F. App'x at 607. The Eleventh Circuit rejected the claim, reasoning as follows:

> The undisputed statements of [his] co-defendants confirm that Smalls exercised decision-making authority over the planning, strategy, pricing, purchase, transport, and delivery operations of the extensive conspiracy. For example, Smalls planned the cross-country purchase of drugs from his own supplier and recruited and directed at least one person, Henry James, and possibly more, to transport and deliver the drugs to various suppliers. Smalls facilitated the installation of trap doors in the vehicles to support the work of the conspiracy. Smalls told distributors how and when to pay for the drugs, and he advised distributors on how to plan their movements to avoid police detection. The undisputed facts show that Smalls took a larger share of the fruits of the conspiracy, given the large quantity of cash that Smalls carried on his person and stored in his residence and his numerous, expensive vehicles, as compared to the $200 to $300 payments made to James for delivery of the drugs. Thus, Smalls engaged in more than a buyer/seller relationship. Further, Smalls' repeated admission that he recruited, directed, and controlled James, and possibly one other participant, is sufficient to support the leadership enhancement.

*Id.* at 607-8.

To the extent he has simply re-raised the claim,[8] it must be

---

[8] Despite raising this as an ineffectiveness claim, Smalls still insists that the sentencing judge erred by failing to make an individualized finding as to the scope and nature of his participation in the conspiracy and in failing to resolve "disputed" facts related to his role as leader. (Doc. 2 at 34-35.) The appellate decision establishes that the sentencing judge did not err in his fact finding. Hence, this repackaged claim is barred, as noted below.

dismissed out-of-hand, since a claim rejected by the appellate court does not merit rehearing on a different but previously available legal theory. *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000).[9]  Smalls, however, now faults his attorney for failing to present the claim properly at sentencing.  (Doc. 2 at 30.)  He contends that Hilliard argued against himself by admitting that Smalls in fact directed James in his actions. (*Id.*)  Additionally, Smalls contends that Hilliard fixated upon the fact that Smalls only directed a single person, rather than arguing that he deserved only a two-point enhancement for supervising a single participant in a drug activity that only involved three persons (Smalls, Petty, and James), instead of a four-point enhancement as a leader/organizer of a criminal enterprise involving five or more participants.[10]  (*Id.* at 30-31.)

---

[9] Moreover, sentencing claims, absent some constitutional, jurisdictional, or fundamental error, are not cognizable in a § 2255 motion.  *See, e.g., Ayuso v. United States*, 361 F. App'x. 988, 991-92 (11th Cir. 2010) (§ 2255 movant's claim that the calculation of his criminal points under the guidelines was no longer correct because one of his state convictions was vacated after he was sentenced did not constitute a constitutional error and did not "implicate[ ] a fundamental defect in the validity of the district court proceedings" so as to rise to the level of a "miscarriage of justice."); *Vallas v. United States*, 2012 WL 2681398 at * 5 (S.D. Ala. Jun. 7, 2012).

[10] Notably, with a criminal history category of 1 and an offense level of 37 (assuming the two-point leadership enhancement applied), Smalls' U.S.S.G.

16

At the outset, the Court notes that Hilliard fought the leadership enhancement. (Cr. 986 doc. at 10-11.) But even if he performed deficiently by failing to craft his arguments to Smalls' standards (or by failing to object to the PSI on that ground), Smalls simply cannot demonstrate *Strickland* prejudice. The unrebutted evidence of record shows that Smalls was involved with more than the three participants he mentions. The most obvious additional participant was his supplier, Javier Valdivia. (PSI ¶¶ 14, 18, 25.) Additionally, his cocaine made it to Alphonso Irving, Tyrone Fields, Telly Petty, Chris Robbins, Ferrell Hull, Jemond Burke, Charles Collins, and Jernart Akins.[11] (PSI ¶¶ 7, 11-16, 18-21, 25.) He had even directly contacted Collins to tell him to leave Savannah until the situation cooled off. (PSI ¶ 13.) He used James to transport the cocaine from Los Angeles through Atlanta to Savannah. (PSI ¶¶ 12, 14-16, 18, 20, 25.) And James acknowledged delivering cocaine to Fields, Akins, Collins, and Petty. (*Id.* ¶ 20.) Smalls' position

---

recommended sentencing range would have been 210-262 months. In other words, he still may have received the same sentence, though it would have been at the upper limit of the guidelines range.

[11] Despite Hilliard's failure to submit objections to the PSI, the documents notes that "Smalls wishes to point out that he does not know Alphonso Irvin, Chris Robbins, or Jemond Burke, and made no direct transactions with them." (PSI ¶ 12.)

that he worked with only James and Petty is new and entirely unsupported. While he insists that it was the government's burden to prove his involvement at sentencing (doc. 2 at 33), he neglects to acknowledge that he bears the burden here, and he has utterly failed to carry it with his novel new perspective on the events. Hence, this claim fails.

### III. CONCLUSION

For the foregoing reasons, Green's § 2255 motion (doc. 1) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this  7Th  day of January, 2013.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA